*42 OPINION OF THE COURT
William Mogulescu, J.
The petitioner moved pro se by writ of habeas corpus for an order vacating his parole warrant and reinstating him to parole supervision based upon his claim that he did not receive a final revocation hearing within 90 days from the waiver of his preliminary hearing. The petitioner’s writ was held in abeyance pending the conclusion of a hearing in order to resolve the factual issue as to whether the petitioner knowingly and voluntarily consented to the postponement of his final parole hearing beyond the 90 days required by statute. Specifically at issue is the placement of petitioner’s parole matter on a “K calendar” which is an open-ended control calendar that allows a parolee to resolve any pending felony charges prior to having a final parole hearing. According to respondents, upon consent, a parolee’s final pending felony hearing is adjourned to this calendar and remains there to December 25 of any given year until one of three conditions occur: the parolee requests that the parole matter be recalendared; the new charge is disposed of with less than a felony conviction; or the parolee is convicted of the new felony charge and is returned to State prison.[1] In the absence of any of these conditions occurring, the matter remains on the K calendar indefinitely with the parole matter automatically adjourned to December 25 of the following year. Petitioner now argues that his consent to his placement on the K calendar was with the understanding that the adjournment was until the specific date of December 25 of 1999; he maintains that he was unaware that his case would remain on the K calendar for an unspecified period of time beyond that date.
On August 3, 2000, a hearing was held before this court.[2] At the hearing, the petitioner testified on his own behalf. Parole Revocation Specialist William Henderson testified on behalf of the Division of Parole.
Petitioner testified that on October 28, 1999, he appeared at Rikers Island Judicial Center for his parole hearing. In addition to the presiding Administrative Law Judge (ALJ), present *43 on that date were petitioner’s attorney and Parole Revocation Specialist Henderson. At that time petitioner informed his attorney that he had an open indictment in Kings County which was soon going to be dismissed. Upon being so advised by petitioner’s attorney, Henderson then informed petitioner that “we could either go with it right now in the final hearing and give you six months or whatever, or we could adjourn it to December 25 on the K calendar.” Petitioner decided to adjourn his parole matter to December 25, which he understood to mean that he would be returned to court on December 25, 1999, for his final hearing. No one mentioned a date in the year 2000 or any date or year thereafter. Although petitioner was informed by Henderson that he should call his parole officer if anything happens to his criminal case before December 25, petitioner maintains that he was not advised by the Administrative Law Judge or his attorney that either he or his attorney could contact either the Parole Revocation Specialist or the Parole Violation Unit to request that the parole matter be restored to the regular calendar.
In contrast to the testimony of petitioner, Parole Revocation Specialist William Henderson stated that it was standard procedure for the Administrative Law Judge to explain the workings of the K calendar to a parolee, and that this was done in the instant matter. Henderson also recalled that the presiding ALJ informed petitioner that he could contact Henderson or the “division” when he wanted to come off the K calendar. Henderson testified that, as a matter of course, he advises parolees that placement on the K calendar would result in a parolee being taken off the regular calendar “until [parolee’s] court case is disposed of or if [parolee’s] attorney [sic] would like to be placed back on the regular calendar prior to [parolee’s] indictment being completed.” According to Henderson these aforementioned advisories always take place off the record rather than being recorded on audio or video tape because to so inform each parolee on the record “would use more * * * tape time.”
Henderson also testified that, as a matter of course and in this particular instance, when a parolee requests to be placed on the K calendar he uses a 9015 Form[3] and that in the section wherein it indicates “case adjourned to,” Henderson would write “adjourned to K calendar chargeable to the releasee.” *44 Henderson further stated that he writes his office telephone number on the form and further advises the parolee to contact him if he wishes to come off the K calendar. One copy of this form is then given to parolee’s attorney and one copy is given to parolee. Henderson stated that in prior instances he has observed parolees leave the hearing room without their copy of this form. In contrast, petitioner denied receiving any paperwork[4] at the conclusion of his appearance. Although he did state that his attorney received a half sheet of paper which was filled out in part by Henderson and had the date of December 25 written on it, petitioner was not given any form, nor provided with any telephone numbers.
On January 11, 2000, petitioner’s Kings County felony indictment was dismissed (Downing, J.), and petitioner was returned to Rikers Island. Although petitioner denies ever calling Henderson, Henderson testified that he next spoke to petitioner sometime in May when he received a telephone call from him requesting that his parole matter be restored to the regular calendar. On June 1, 2000, after he filed the instant writ, petitioner was returned to Rikers Island Judicial Center for his final hearing.[5]
[6]At that time petitioner pleaded guilty to an added drug charge, all remaining charges were withdrawn, and it was determined that petitioner be restored to parole supervision to complete the Willard Drug Treatment Program.®
- Under these facts, it is clear to this court that the Division of Parole has failed to establish adequately that petitioner’s consent to being placed on the K calendar was a knowing and voluntary waiver of his right to a timely final parole hearing. Even accepting as true Henderson’s testimony, in this case there was no conversation on the record which reflects that petitioner was fully informed of the ramifications of the placement of his case onto the fictitious K calendar and that, as a result, the case would remain there in perpetuity until *45 petitioner took the affirmative steps to have his case heard. In the absence of there being any proof on the record that petitioner was made aware of the ramifications of the placement of the matter on the K calendar, this court cannot now find that petitioner knowingly and voluntarily waived his right to have his final parole hearing within the requisite statutory time frame. (See, People v Jones, 112 AD2d 773 [4th Dept 1985] [an off-the-record promise “merits no judicial recognition”].) While it is always a dubious venture to rely on off-the-record discussions in support of a subsequent claim, it is even more vexing when, as here, the court is presented with what appears to be a flawed system. It is deeply disturbing to this court that although one of the three triggering mechanisms for removal of a case from the K calendar was met in this case when petitioner’s underlying felony case was dismissed in January, petitioner’s parole matter remained on the K calendar and was not restored to the regular calendar until, according to Henderson, petitioner so requested sometime in May. Obviously, it is not only the calendar itself which is fictitious, but the triggering mechanisms as well.
Furthermore, there is simply no reason why a contemporaneous record is not made of the proceeding. Henderson’s testimony that a taped record is not made in order to save tape staggers the mind. The Division of Parole would be well advised to implement whatever procedures are necessary to insure that a record is made of the proceeding in which a parolee waives his statutory right to a speedy hearing. The continued failure to insure that such a record is made will only serve to give rise to the inference that the Division of Parole does not care about the consequences which may well flow from the lack of a record.
However, despite the fact that respondents have failed to establish that petitioner’s participation in the K calendar was a knowing and voluntary waiver of his right to a timely final parole hearing, any claims the petitioner may now have regarding the timeliness of his final parole hearing are rendered moot by the revocation of his parole as a result of his plea of guilty. (See, People ex rel. Chavis v McCoy, 236 AD2d 892 [4th Dept 1997] [petitioner’s claims regarding his preliminary hearing are subsumed by the revocation of his parole following his guilty plea]; Matter of Collins v Rodriguez, 138 AD2d 809 [3d *46 Dept 1988]; Tollett v Henderson, 411 US 258 [1973] .)[7] Accordingly, the petitioner’s writ is denied.

. Letter by Steven H. Philbrick, Chief Administrative Law Judge, to Valerie Singleton, dated February 17, 2000. (See, respondents’ exhibit H, affirmation in opposition.)

. Petitioner elected to have the representation of counsel prior to the commencement of the hearing.

. Introduced as respondent’s A-l.

. Petitioner denied seeing or being given a copy of form 9015.

. Petitioner stated that at the time Henderson claims to have received a telephone call from him requesting that he be placed back on the calendar he was in punitive segregation and was only allowed one telephone call a week; petitioner further testified that this phone call would be to his father.

. Petitioner stated that Henderson informed him that if he was not interested in the Willard Program that he would receive a six-month sentence as a parole violation.

. Petitioner argues that a letter from Terrence X. Tracy, Counsel to the Division of Parole, to Valerie Singleton, dated May 17, 2000 (exhibit B, respondents’ supplemental affirmation) lends support to a finding that claims are not waived despite a subsequent guilty plea. That letter requests that the Assistant Attorney General not assert a waiver defense where in habeas proceedings in Supreme Court the parolee enters a plea of guilty at the arraignment part with an objection noted on the record regarding any procedural infirmity. This court is not, however, persuaded by this correspondence to find that petitioner’s claim herein survives his guilty plea. As is pointed out by respondents, the letter addresses those situations where a parolee pleads guilty at arraignment, which was not here the case. Further, even were this court to find this letter applicable to these circumstances, it applies only in those instances where a parolee expressly preserves his habeas claim on the record prior to entering a plea. Here, at the time of the plea there was no mention of parolee’s pending writ or the matter being litigated therein. (See, exhibit A, respondents’ supplemental affirmation.) Therefore the claim was unpreserved for review.